Lippman *v.* Boals.

NANNIE LIPPMAN *v.* J. C. BOALS *et al.*

1. MARRIAGE CONTRACT. *Ante-nuptial. Construction.* Under a settlement, made in anticipation of marriage, by which the intended husband conveys realty and choses in action to a trustee in trust to permit the husband and wife, after the marriage, to have the undisturbed possession, use and enjoyment of the property during their joint lives, and to be conveyed to the wife if she survive the husband, the husband has no power, during the marriage, to assign the choses in action to one of his creditors as collateral security for his debt, and the wife may, after the death of the husband, follow the funds into the hands of the assignee.

2. SAME. *Same. Creditor.* In order to make an ante-nuptial settlement by the husband on the wife of his own property good as to his then existing creditors, it must be clearly shown by those claiming under the settlement that the husband reserved sufficient property to pay his just debts; but a person is not an existing creditor within the rule, who, although a large creditor at the time of the marriage by open account for goods sold, continues for five years there-

after, with knowledge of the settlement, to sell the husband goods to a much larger amount, and receives payments from time to time on his running account, not appropriated by either party, more than sufficient, if applied to the oldest items of account, to have paid off the debt existing at the time of the marriage.

3. RUNNING ACCOUNTS. *Appropriation of payment.* In the case of running accounts between parties, where there are various items of debit on one side and various items of credit on the other, occurring at different times, without any special appropriation of payments by either party, the settled rule is that the successive payments or credits are to be applied to the discharge of the items of debit, antecedently due, in the order of time in which they stand in the account, the earliest items being first extinguished.

---

FROM TIPTON.

---

Appeal from the Chancery Court at Covington. H. J. LIVINGSTON, Ch.

SIMONTON & YOUNG for complainant.

SMITH & LAUDERDALE and POSTON & POSTON for defendants.

COOPER, J., delivered the opinion of the court.

The complainant is the widow of Alexander Lippman, and files this bill against her late husband's personal representative and the members of the firm of Schoolfield, Hanauer & Co., to follow certain choses in action or their proceeds in the hands of the firm by assignment from the husband, which she claims under an ante-nuptial settlement. The chancellor granted the relief sought, and the Referees report that his decree should be affirmed.

On June 4, 1874, Alexander Lippman and the complainant, then Nannie Wolf, entered into a mar-

riage settlement or ante nuptial contract, in contempla-
tion of their speedy inter-marriage. By this instrument
the said Alexander Lippman conveyed to a third
person, as trustee, certain realty and notes to the
nominal amount of about $5,000, reciting that the
conveyance was to secure the said Nannie from want,
and in trust to permit the said Lippman and Nannie,
after their marriage, to have the undisturbed posses-
sion, use and enjoyment of said property during their
joint lives, and in the event of the death of the
said Alexander, leaving the said Nannie surviving,
then to convey the said property to the said Nannie.
The parties to the contract were married on August
19, 1874.    The husband was at the time, and had
been for several years, engaged in business as a mer-
chant.    He made his purchases of stock principally
from the defendants, Schoolfield, Hanauer & Co., and
was indebted to them at the date of the marriage
settlement over $5,000, and at the consummation of the
marriage, a little over $10,000.    These creditors were
advised of the marriage settlement, which was duly
registered, and after causing it to be examined and
inquiring into the pecuniary condition of Alexander
Lippman, they continued to sell him goods and deal
with him as before.    From the date of the ante-
nuptial contract until October, 1877, they sold Alex-
ander Lippman goods to the amount of $49,940.54, and
received from him from time to time payments upon their
running account, by which his indebtedness to them
was reduced at the time of his death, on September
21, 1879, to $3,940.09.    On April 23, 1875, Alex-

ander Lippman transferred and assigned to them, as collateral security on his debt, a large number of choses in action, including some of the notes embraced in the marriage settlement. Lippman died insolvent, and this bill was filed on February 17, 1880, to hold the firm liable for the notes thus received.

The defendants, Schoolfield, Hanauer & Co., demurred to the bill, the principal ground of demurrer relied on being that the husband, by the terms of the settlement, had the unlimited power of disposing of the notes included therein. But this court, affirming the decree of the chancellor, held that there was no such right of disposition in the husband, the instrument merely providing for the joint use of the trust assets by the husband and wife during coverture, the *corpus* of the funds and property to go to the wife in case of her surviving the husband: *Lippman* v. *Boals*, 11 Lea, 489. If the question were an open one, we would now come to the same conclusion. In this view, the right of the complainant, to whom the trustee has conveyed the trust assets, to follow the trust funds into the hands of the defendants is clear, and not denied. The contention of the defendants is that the marriage contract conveyed to the trustee more of the husband's property than is allowed by our statute, or, at any rate, that the complainant, upon whom the burden of proof is thrown by the statute, has not shown affirmatively that a sufficiency of the husband's property was reserved to pay his then existing debts.

The consideration of marriage renders a settlement

of property by the husband on the wife valid even as against creditors: Bish. on Contracts, sec. 527; *Woodward* v. *Woodward*, 5 Sneed, 49. But our statute provides: " No marriage settlement or other marriage contract shall be good against creditors, where a greater value is secured to the intended wife, and the children of the marriage, or 'either of them, than the portion actually received with the wife in marriage, and such estate as the husband at the time of his marriage shall be possessed of, after deducting the just debts by him then due and owing; in case of any suit upon any such marriage contract, where any creditor is a party, the burden of proof lies upon the person claiming under such marriage contract." The record in this case does not show that the husband received any property by the wife. It does show that, in addition to the realty conveyed by the marriage settlement, he owned at the time an improved lot on which he resided worth about $2,500, the furniture therein worth $500, and a stock of goods of the value of $6,000 or $7,000. His sales as a merchant on credit from January 1, to December 25, 1874, amounted to $17,000, of which $14,000 were collected. These facts are shown by his books.

Settlements of property by a husband upon his wife, even when voluntary, all of our authorities agree are not void *per se.* There is a presumption that such a settlement is fraudulent as to existing creditors, which presumption may be rebutted by showing the reservation of ample property to pay all the debts, but as to subsequent creditors the rule is otherwise,

and fraud in fact must be established: *Welcker* v. *Price*, 2 Lea, 666, and cases there cited. A marriage settlement stands under the statute upon the same footing, and is only voidable at the instance of existing creditors prejudiced thereby. There is no pretense of fraud, in fact, in the present case, and the only presumption is in favor of creditors existing at the date of the marriage, when the settlement went into effect. There can be no doubt, as the cases cited by the learned counsel of the defendants abundantly show, that this court, in the case of existing creditors, does require the reservation of sufficient property to pay them, and that the inquiry is limited to the circumstances of the grantor at the time of the execution of the conveyance. And the statute itself throws the burden of proof upon the person claiming under the marriage contract. But the difficulty in the present case is that the defendants do not show that the debt on which they now sue was an existing debt when the contract was executed, in other words, that the defendants were then existing creditors within the rule.

The proof is that the defendants had a debt against Lippman by open account at the time of the marriage of a little over $10,000, that they afterward sold him additional goods to the amount of about $50,000, and that the entire indebtedness, by payments from time to time, had been reduced to about $4,000. The payments, it is obvious, largely exceeded the debt at the date of the marriage, and there is nothing to show that they were not applied to the satisfaction of that debt. In the case of running

Lippman *v.* Boals.

accounts between parties, where there are various items of debt on one side, and various items of credit on the other side, occurring at different times, and no special appropriation of the payments is made by either party, the successive payments or credits are to be applied to the discharge of the items of debit ante-cedently due, in the order of time in which they stand in the account; or, in other words, each item of payment or credit is applied in extinguishment of the earliest items of debt standing in the account, until the whole payment or credit is exhausted: 2 Sto. Eq. Jur., 459 *b.* It is probable, also, that the payments would be so applied under the rule adopted in this State, where there are several debts of different nature, and that is to the debt which lies heaviest on the debtor: *Bussey* v. *Gaut,* 10 Hum., 238. The debt under consideration is all of the same nature, and by open account, and the first rule, which is universally recognized, would apply.

The exceptions to the report will be disallowed, and the decree affirmed with costs.